Ortiz Carrión, Juez Ponente
*973 TEXTO COMPLETO DE LA SENTENCIA
El Municipio de Guaynabo apeló una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en la cual se declaró con lugar la demanda incoada por la señora Zoraida Cruz López contra el Municipio de Guaynabo, Héctor O'Neill, Kathy Acosta, Olga Capó y Juan Machuca. Posteriormente, tanto la demandante Zoraida Cruz López, como las co-demandadas Olga Capó y Kathy Acosta, apelaron la sentencia dictada por el tribunal a quo. Por tratarse de recursos relacionados entre sí, este Tribunal ordenó su consolidación.
En su apelación, el Municipio de Guaynabo señala como único error que el tribunal a quo debió desestimar la reclamación de la señora Cruz López por estar prescrita. Las señoras Olga Capó y Kathy Acosta también plantean que el tribunal a quo debió desestimar la demanda, por estar prescrita. Además, aducen que el tribunal a quo erró al determinar que ellas tienen responsabilidad solidaria con el Municipio por los daños causados a la señora Cruz López. Por su parte, la señora Cruz López cuestiona el remedio que le fue concedido, y plantea que el tribunal a quo erró al no ordenar su reinstalación; al no ordenar que se le compensara por los salarios dejados de percibir; al no fijar una cuantía mayor por concepto de daños y perjuicios sufridos; al no imponer intereses sobre la cuantía de la sentencia. Además, plantea que el tribunal a quo erró al limitar la responsabilidad del Municipio de Guaynabo y al desestimar la demanda del señor Héctor O'Neill en su carácter personal.
Los hechos pertinentes para atender estos planteamientos, surgen de las determinaciones de hecho de la sentencia apelada que reproducimos a continuación.
I
La señora Zoraida Cruz López estuvo empleada por el Municipio de Guaynabo desde el 23 de agosto de 1989 hasta el 31 de diciembre de 1992, cuando su nombramiento no fue renovado. La señora Cruz López ocupaba un puesto transitorio desde enero de 1990. Desde marzo de 1992 hasta septiembre de 1992, la señora Cruz López trabajó en la Oficina de Servicios al Envejeciente del Municipio bajo la supervisión de la señora Olga Capó. En abril de 1992, la asignaron al Programa de Ama de Llaves de esa Oficina. Para cumplir con las funciones de su empleo la señora Cruz López tenía que transportarse en un vehículo del Municipio.
El señor Juan Machuca se desempeñaba como chofer en el Municipio, y fue asignado a transportar a la señora Cruz López a los hogares de los envejecientes. En mayo de 1992, el señor Machuca le comunicó a la señora Cruz López que quería tener amistad con ella para darle celos a su esposa. A partir de esa fecha, durante los próximos meses, el señor Machuca incurrió en la siguiente conducta con la señora Cruz López:

"a. le enviaba papelitos indicándole "necesito hablar contigo solos y fuera de aquí. Si puedes me lo demuestras [sic] con una sonrisa";

b. le hacía comentarios de que todo lo que ella se ponía le quedaba bien, que estaba "dura", que le quedaba bien la ropa, que estaba "como la langosta";

c. le preguntaba a otros empleados por ella y le indicaba "y como [sic] está la prieta amiguita mía";

d. le decía "mami, te voy a machucar" y se movía como si estuviera bailando;

e. se sentaba en un escritorio al lado de ella y le tiraba besos y le guiñaba los ojos;

f. el 14 de septiembre de 1992 le dijo que no iba a poder trabajar más por culpa de ella. Ella se mostró asombrada y entonces él le indicó "mira mis manos" y le dijo que estaban llenas de callos. Luego acercó sus manos a sus genitales y movió su cuerpo hacia delante y hacia atrás varias veces, a manera de un acto de masturbación;

g.durante octubre y noviembre de 1992 le llamó a su casa en repetidas ocasiones, haciéndole proposiciones;

*974
h. en ocasiones al pararse la señora Cruz López de la silla donde laboraba, él se sentaba enseguida y le indicaba que quería aprovechar el calor de su cuerpo;

i. le manifestaba que no se pusiera cierta ropa que a él no le gustaba y le indicaba que provocaba a las demás personas con esa ropa."
Ante tal conducta, que se repetía dos o tres veces a la semana, la señora Cruz López se puso nerviosa, y en ocasiones le habló fuerte al señor Machuca, rechazándolo. Durante el mes de agosto de 1992 la señora Cruz López le informó esta situación a su supervisora, la señora Olga Capó. Además, le indicó que este señor era malcriado y hostil con ella. En ese momento, la señora Capó le indicó que necesitaba tiempo y que no creía que el señor Machuca hubiese incurrido en tales actos.
La señora Cruz López también le informó esta situación a los siguientes empleados del Municipio de Guaynabo:

"a. durante el mes de septiembre de 1992, al señor Pedro López, director de Recreación y Deportes;

b. durante el mes de julio de 1992, a la señora Provi Monserrate, encargada de la División de Ama de Llaves;

c. al señor Pilar de la Paz;

d.durante el mes de julio de 1992, a la señora Aida Ibañez, de la Oficina de Servicios al Envejeciente;

e.durante el mes de agosto de 1992, a la señora Nilda Ortega, contable de la Oficina de Servicios al Envejeciente, quien estuvo presente en la conversación con la señora Capó;

f durante el mes de septiembre de 1992, al señor Roberto Grana."

El 14 de septiembre de 1992, ocurrió otro incidente entre la señora Cruz López y el señor Machuca. En ese momento ella le habló fuerte y le manifestó que no podía tolerar más esa situación. Acto seguido, tomó su cartera y se marchó de la oficina. Ese día, la señora Cruz López acudió al doctor Alex Yemat a quien le explicó la situación. El doctor le diagnosticó una crisis nerviosa y le recomendó medicamentos y descanso. Desde entonces, la señora Cruz López no regresó a trabajar.
El 23 de septiembre de 1992 la señora Cruz López volvió a hablar con su supervisora la señora Olga Capó sobre la situación con el señor Machuca. Esa vez la señora Capó le indicó, sonriendo, que tendría cuidado con el señor Machuca porque podía hostigarla a ella también. Posteriormente, el 1 de octubre de 1992 la señora Cruz López denunció al señor Machuca por alteración a la paz, a raíz de unas llamadas telefónicas en que éste le hizo insinuaciones amorosas. 
Nuevamente, el 2 de octubre de 1992, la señora Cruz López habló con su supervisora, la señora Capó, sobre la situación con el señor Machuca, y ésta le indicó que retirara los cargos contra el señor Machuca porque eso le hacía daño a ella y al Municipio. Además, le dijo que el señor Machuca había escarmentado.
En octubre, la señora Cruz López también se comunicó con la señora Kathy Acosta, Directora de Personal del Municipio de Guaynabo, a quien le informó que era víctima de hostigamiento sexual y le solicitó orientación. En ese momento, la señora Acosta le respondió que como se había presentado una querella en la Policía de Puerto Rico, ella no podía decirle nada porque lo que dijera podría ser utilizado en su contra.
Posteriormente, el 4 de noviembre de 1992, el doctor Yemat determinó que la señora Cruz López continuaba con la crisis nerviosa, y la refirió a un psiquiatra. La señora Cruz López le entregó el certificado médico del doctor Yemat a su supervisora, la señora Olga Capó.
*975 En noviembre de 1992, la señora Cruz López le informó a la señora Isabel Velázquez, de la Oficina de Personal, que quería radicar una querella contra el señor Machuca por hostigamiento y le indicó que se lo había informado a su supervisora la señora Olga Capó. Esa querella no se investigó. No se celebró una vista ni se le tomaron declaraciones a la señora Cruz López.
Así las cosas, el 16 de noviembre de 1992 la señora Cmz López solicitó que se le refiriese al Fondo del Seguro del Estado (F.S.E.) por la situación de "hostigamiento de parte de un compañero de trabajo lo cual la ha afectado emocionalmente" y la señora Isabel Velázquez de la Oficina de Personal del Municipio preparó el informe patronal. Ese mes, la señora Capó se comunicó sobre esta cuestión con la señora Acosta, y le informó al doctor Sorrentino, Director del Departamento de Salud y Educación del Municipio de Guaynabo, sobre su conversación con la señora Acosta.
El 20 de noviembre de 1992 el F.S.E. refirió a la señora Cmz López a tratamiento y descanso por "emotional stress syndrome". Con posterioridad el F.S.E. decidió que no tenía jurisdicción sobre ese caso por tratarse de una condición causada por actos de hostigamiento sexual.
Finalmente, el 1 de noviembre de 1993, la señora Zoraida Cmz López presentó su demanda contra el Municipio de Guaynabo, el Hon. Héctor O'Neill, la señora Olga Capó, la señora Kathy Acosta y el señor Juan Machuca en la cual reclamó los daños sufridos a causa de las actuaciones del señor Machuca y la falta de acción de sus supervisores en el Municipio de Guaynabo, y solicitó ser reinstalada en su puesto y los sueldos dejados de percibir.
El 6 de febrero de 1996, el tribunal a quo dictó sentencia en la cual declaró con lugar la demanda, imponiéndole a los co-demandados responsabilidad solidaria por los daños y angustias mentales causados a la señora Cmz López. El tribunal a quo valoró los daños sufridos por la señora Cruz López en $100,000.00, y le impuso responsabilidad civil a los co-demandados por una suma igual al doble de ese importe. Sin embargo limitó la responsabilidad del Municipio de Guaynabo a $75,000.00. Por otro lado, declaró sin lugar la demanda en cuanto al Hon. Héctor O'Neill en su carácter personal. Además, le impuso a los co-demandados responsabilidad por la suma de $2,000.00 en concepto de honorarios de abogado y las costas.
De la referida sentencia apelan tanto la señora Cmz López como los co-demandados, Municipio de Guaynabo y las señoras Capó y Acosta.
II
Para facilitar la discusión de los errores señalados por las partes, discutiremos los mismos por separado.
A. Núm. KLAN-96-00207
En su apelación, el Municipio de Guaynabo señala como único error que el tribunal a quo debió desestimar la reclamación de la señora Cmz López por estar prescrita. Los argumentos que esgrime el Municipio para sostener su planteamiento de prescripción no nos persuaden.
La Ley Núm. 17 "declara como política pública del Estado Libre Asociado de Puerto Rico que el hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo y como tal constituye una práctica ilegal e indeseable...". L.P.R.A. see. 155. Esta ley prohíbe el hostigamiento sexual en el empleo, e impone responsabilidades por su violación. La ley no establece un término prescriptivo, ni se refiere a la interrupción del mismo. Sin embargo, en el Informe Conjunto de la Cámara de Representantes de 23 de marzo de 1988 en tomo al P. del S. 1437 preparado por las Comisiones que estudiaron la medida que eventualmente se convirtió en la Ley Núm. 17, surge la intención del legislador en cuanto al término prescriptivo y su interrupción. Sobre el particular, en el informe se señala que la Ley Núm. 17:
"[N]o establece un término prescriptivo para las acciones que se pueden radicar a su amparo debido a que este aspecto ya ha sido establecido en el artículo 1868 del Código Civil... que fija el término de un año para las acciones de daños y perjuicios por responsabilidad extracontractual *976 como lo es en el aspecto que recoge esta medida. Al estar establecido en el ordenamiento civil que es supletorio a esta medida, artículo 12 del Código Civil... se configuran adecuadamente los diversos aspectos que están relacionados a esta ley, incluyendo todo lo relativo a la prescripción de las acciones y su interrupción .... En este sentido deberá interpretarse que, de acogerse voluntariamente un obrero a un procedimiento administrativo interno de una empresa, o de arbitraje, o en virtud de un convenio colectivo, se entenderá interrumpido el término prescriptivo, por todo el tiempo que duren estas gestiones..." (Enfasis suplido.)
En el caso de autos, la señora Cruz López se quejó a la Oficina de Personal del Municipio y a sus supervisores, por lo que se acogió al procedimiento interno de quejas establecido en el Municipio de Guaynabo. De este modo, para ser consistentes con la intención legislativa debemos interpretar que interrumpió el término prescriptivo de un año para la presentación de su reclamación contra el Municipio por el alegado hostigamiento sexual del cual era víctima.
Según las determinaciones de hecho, en noviembre de 1992, la señora Cruz López le informó a la señora Isabel Velázquez, de la Oficina de Personal del Municipio de Guaynabo, que quería radicar una querella contra el señor Machuca por hostigamiento y le indicó que se lo había informado a su supervisora la señora Olga Capó.
También según las determinaciones de hecho, el 16 de noviembre de 1992 la señora Cruz López le solicitó que se le refiriese al F.S.E. por la situación de "hostigamiento de parte de un compañero de trabajo lo cual la ha afectado emocionalmente" y la señora Isabel Velázquez de la Oficina de Personal del Municipio preparó el informe patronal.
El Memorando sobre Política del Municipio de Guaynabo en cuanto a Hostigamiento Sexual en el Empleo establece un procedimiento de querella para los empleados que entiendan que han sido o están siendo víctima de actos de hostigamiento sexual y dispone lo siguiente: 

"1. En forma sosegada pero firme, confrontara la persona que incurre en tales actos; manifestarle claramente que tal conducta no es aceptable ni bienvenida y exigir la inmediata cesación de dicha conducta.

2. Si el hostigamiento persiste o si la persona afectada tiene motivos para temer una acción en represalia en cuanto a su empleo, deberá dirigirse a su supervisor inmediato y, bien sea en forma oral o escirto [sic] expresarle detalles específicos en lo que entiende es una conducta de hostigamiento sexual hacia su persona...." (Enfasis suplido.)
De esta forma, las quejas que la señora Cruz López comunicó ante los funcionarios del Municipio de Guaynabo durante el mes de noviembre de 1992 para que se procediera contra el señor Machuca, tuvieron el efecto de interrumpir el plazo para incoar su acción. La señora Cruz López presentó la acción que origina los recursos ante este Tribunal el 1 de noviembre de 1993, por lo que la misma fue presentada dentro del término prescriptivo.
B. Núm. KLAN-96-00210
Las señoras Olga Capó y Kathy Acosta también plantean que el tribunal a quo debió desestimar la demanda, por estar prescrita. Además, aducen que el tribunal a quo erró al determinar que ellas tienen responsabilidad solidaria con el Municipio por los daños causados a la señora Cruz López.
Por su parte, las apelantes Capó y Acosta plantean que nunca se presentó una queja administrativa en el Municipio de Guaynabo. Sin embargo, de las determinaciones de hecho consignadas por el tribunal a quo en la sentencia apelada surge que sí se presentó una queja y que la misma nunca se investigó.
Nada hay en el dictamen del foro de instancia, ni en los planteamientos de las apelantes que indique que el tribunal a quo actuó con pasión, prejuicio o con parcialidad o que exista error manifiesto. Es norma reiterada que en ausencia de esas circunstancias no se intervendrá con la apreciación de la prueba que haga el foro de instancia. Méndez de Rodríguez v. Morales Molina, 96 J.T.S. 149, pág. *977 347; Monitor Arzola v. Sociedad Legal de Gananciales, 95 J.T.S. 77; Rodríguez Oyóla v. Machado, 94 J.T.S. 82; Regla 43.2 de las de Procedimiento Civil.
Por otro lado, conforme al Artículo 1874 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5304, la interrupción de la prescripción en las obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores y deudores.
En Arroyo v. Hospital La Concepción, 92 J.T.S. 66, pág. 9537, el Tribunal Supremo cita con aprobación a Santos Briz y señala que "...la jurisprudencia sanciona la solidaridad de los responsables de un acto ilícito civil no sólo cuando actúan en la misma línea de coautoría (corresponsabilidad directa), sino cuando es la empresa o patrono quien responde por los actos de sus dependientes".
De tal forma, la interrupción de la prescripción de la acción de responsabilidad contra el Municipio de Guaynabo como patrono afecta también a las señoras Capó y Acosta. Ellas responden por sus omisiones propias como supervisoras y el Municipio responde por las omisiones de sus supervisoras. Por tanto, aunque no están en la misma línea de coautoría tanto las supervisoras como el Municipio son corresponsables solidariamente por las omisiones de las primeras.
Ahora bien, en cuanto al segundo señalamiento de error, las apelantes aducen que al imponerle responsabilidad solidaria, el tribunal a quo obvió una estipulación. En síntesis, plantean que las partes estipularon que la acción del epígrafe era una dirigida únicamente contra los funcionarios demandados en su carácter oficial y que así surge de la minuta de los procedimientos ante el tribunal a quo el 3 de febrero de 1995, copia de la cual acompañan con el recurso de apelación. 
Examinada la minuta en cuestión, de ella no surge que se estipulara algo sobre la responsabilidad de los demandados, ni que el tribunal le impartiera aprobación a una estipulación. En lo pertinente, en la minuta se señala lo siguiente:

"La parte demandante somete su caso.

El licenciado Vega hace planteamiento al Tribunal [sic], solicita la desestimación de la demanda en cuanto al Sr. Alcalde Héctor O'Neill en su carácter personal y argumentó su solicitud.

El licenciado Héctor Santiago manifiesta que las alegaciones son por adopción; sí está de acuerdo en cuanto a su carácter personal, pero como patrono responde.

El Tribunal hace referencia a las alegaciones de la demanda y no ve nada en la demanda de que se quería demandar por sí. Aclarado que la acción no es en cuanto a carácter [sic] personal de ninguno de los demandados, se declara sin lugar la moción de desestimación."

Este Tribunal no puede conceder el alcance que las apelantes pretenden conferirle a esa minuta. Esa minuta es un documento preparado por una secretaria de sala, y parece no estar firmada por la jueza que dirigía los procedimientos. Además no consta que se hubiese notificado a las partes. Por otro lado, contrario a las expresiones que se le atribuyen a la jueza en la minuta, la demanda presentada por la señora Cruz López, contiene alegaciones en cuanto al carácter en que son incluidas las apelantes. Las alegaciones número 23 y 24 de la demanda leen como sigue:

"23. Los supervisores de la demandante, empleados en función por el Municipio de Guaynabo, cuando tuvieron conocimiento que la demandante era víctima de hostigamiento sexual optaron [sic] deforma negligente por sepultar la querella de la demandante y no implementaron ni ordenaron una investigación de dicha querella; tampoco separaron al hostigador Juan Machuca del área del trabajo de la demandante, creando así un ambiente hostil, intimidante y represible [sic] en el área de trabajo.

24. Los demandados Kathy Acosta, Olga Capó y Héctor O'Neil [sic] actuando individualmente y en su capacidad como supervisores y oficiales administrativos del Municipio de Guaynabo, so color de autoridad y a sabiendas y con conocimiento que el hostigamiento sexual en el trabajo es una 
*978
violación de la Constitución del Estado Libre Asociado, las Leyes Federales y las Leyes locales privaron a la demandante de sus derechos constitucionales."

A su vez, en la demanda se solicita como remedio que se imponga responsabilidad solidaria a los demandados por los actos que allí se alegan.
Por último, la minuta es imprecisa en cuanto a las expresiones del licenciado Santiago y a estas expresiones no puede atribuírsele el carácter de una estipulación, ni en el expediente ante nuestra consideración hay otra constancia de la supuesta estipulación ni de su aprobación por el tribunal a quo. Este Tribunal no está en condición de sustituir el criterio del tribunal a quo al determinar que no existió tal estipulación.
Además, las determinaciones de hecho de la sentencia apelada, las cuales no fueron cuestionadas por las apelantes, sostienen la conclusión del tribunal a quo imponiéndole responsabilidad solidaria a ambas en su carácter personal por los actos y omisiones incurridos.
C. Núm. KLAN-96-00222
Por su parte, la señora Cruz López cuestiona el remedio que le fue concedido por el tribunal a quo, y plantea que ese foro erró al no ordenar su reinstalación y el pago de los salarios dejados de percibir; al no fijar una cuantía mayor por concepto de daños y perjuicios sufridos; y al no imponer intereses sobre la cuantía de la sentencia. Además, plantea que el tribunal a quo erró al limitar la responsabilidad del Municipio de Guaynabo y al desestimar la demanda del señor Héctor O’Neill en su carácter personal. Los errores planteados por la señora Cruz López tampoco fueron cometidos. Veamos.
La señora Cruz López tenía un empleo transitorio en el Municipio de Guaynabo y su nombramiento no fue renovado a su vencimiento el 31 de diciembre de 1992. Ella sostiene que la no renovación de su nombramiento fue un acto de represalia, consecuencia de su querella sobre la conducta del señor Machuca, por lo que debe ordenarse su reinstalación y el pago de los salarios dejados de percibir. Sin embargo, a tenor con lo resuelto por el Tribunal Supremo de Puerto Rico en el caso de Orta v. Padilla Ayala I., 92 J.T.S. 96, la señora Cruz López no tiene derecho a ser reinstalada en su empleo. Así lo resolvió el tribunal a quo, y en su recurso la señora Cruz López omite referencia a la doctrina pautada en dicho caso por el Tribunal Supremo. La señora Cruz López no tenía una expectativa de continuidad en su puesto luego de expirado su nombramiento.
Por otro lado, la señora Cruz López tampoco está satisfecha con la cuantía concedida en concepto de daños y perjuicios, y solicita que este Tribunal aumente la misma. Plantea que es una joven madre de escasos recursos económicos y que como consecuencia de los daños sufridos no ha podido reintegrarse a la fuerza laboral. Además, plantea que los demandados no mitigaron los daños, "obligándola a llevar un proceso largo, tedioso y doloroso". Por último, plantea que la prueba pericial presentada estableció los daños sustanciales que recibió y que continúa recibiendo. Basándose en tales planteamientos, solicita que este Tribunal aumente al doble la cuantía de $100,000.00 que por concepto de daños y perjuicios le concedió el foro de instancia y que aumente de $2,000.00 a $40,000.00 la suma correspondiente a honorarios de abogado.
La gestión judicial de estimación y valoración de daños es particularmente difícil; no existe un sistema mecánico que asegure a los tribunales llegar a un resultado exacto, que garantice que todas las partes estén satisfechas y complacidas. De ordinario, los tribunales de primera instancia están en una mejor posición que los tribunales apelativos para evaluar la cuantía de los daños, pues son los que tienen contacto directo con la prueba que presenta la parte que los reclama. Por esta razón, existe una norma de abstención judicial que dispone que los tribunales apelativos no deben intervenir con las determinaciones de daños hechas por los tribunales de primera instancia, a menos que las cuantías concedidas resulten claramente inadecuadas e improcedente;, esto es que sean "ridiculamente bajas o exageradamente altas". Quiñones López v. Manzano Pozas, 96 J.T.S. 95, pág. 1315; Vélez Rodríguez v. Amaro Cora, 95 J.T.S. 38, pág. 1315; Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 451 (1985); Urrutia v. A.A.A., 103 D.P.R. 643 (1975); Valdejuly Rodríguez v. A.A.A., 99 D.P.R. 917 (1971).
*979 La parte que solicita la modificación de las sumas concedidas por un tribunal de primera instancia en concepto de daños, tiene que demostrarle al tribunal apelativo la existencia de circunstancias especiales que así lo requieren. Vélez Rodríguez v. Amaro Cora, supra; Canales Velázquez v. Rosario Quiles, 107 D.P.R. 757 (1978).
En el caso de autos, la señora Cruz López no ha demostrado circunstancias especiales que ameriten que la cuantía concedida por el tribunal a quo sea aumentada. Además, la misma no es ridiculamente baja. Acorde con la deferencia que, de ordinario, merece la estimación de daños efectuada por el tribunal a quo, este Tribunal se abstiene de intervenir con tal determinación. Vélez Rodríguez v. Amaro Cora, supra; Chico v. Editorial Ponce, Inc., 101 D.P.R. 759, (1973).
Por otro lado, la señora Cruz López sostiene que la imposición en la sentencia de la suma de $2,000.00 en concepto de honorarios de abogado tiene el efecto de establecer que los demandados actuaron temerariamente, por lo que procede la imposición de intereses desde la radicación de la demanda. No tiene razón. Tal imposición no tiene el alcance pretendido.
En el caso de autos, la imposición de honorarios de abogado que dispuso en su sentencia el foro apelado responde a las disposiciones de la Ley Núm. 17 de 22 de abril de 1988 que según indicamos prohibe y establece responsabilidad civil por el hostigamiento sexual en el empleo. El Artículo 12 de la Ley Núm. 17, 29 L.P.R.A. sec. 155k, establece específicamente que la parte que resulte responsable por incurrir en tal conducta debe satisfacer el pago de honorarios de abogado y las costas del procedimiento que se fijen por el tribunal correspondiente. En la sentencia apelada, el tribunal a quo hizo constar expresamente que, a tenor con el citado artículo, fijaba la suma de $2,000.00 en concepto de honorarios de abogado, no por temeridad.
En realidad, lo que solicita la señora Cruz López es que este Tribunal haga una determinación de temeridad a nivel apelativo. Sus argumentos no nos persuaden. Tal determinación se efectúa en virtud de la sana discreción del tribunal a quo y este Tribunal no intervendrá salvo abuso de discreción. Quiñones López v. Manzano Pozas, supra, pág. 1316; Bonilla Medina v. P.N.P., 96 J.T.S. 33, pág. 791.
Ahora bien, tal como aclara el Tribunal Supremo de Puerto Rico en Quiñones López v. Manzano Pozas, independientemente de que un demandado haya sido temerario, éste viene obligado a pagar los intereses legales correspondientes que se acumulan sobre la cuantía adjudicada por sentencia. Los intereses legales sobre la sentencia son parte integrante de la sentencia dictada y pueden ser recobrados aun cuando no se mencionen en la misma. Riley v. Rodríguez Pacheco, 124 D.P.R. 733, 743 (1989). Los intereses deberán satisfacerse sobre la cuantía de la sentencia desde la fecha en que el tribunal a quo dictó sentencia final, al tipo de interés legal vigente en ese momento. Regla 44.3 de las de Procedimiento Civil.
La señora Cruz López también plantea que el tribunal a quo erró al limitar la responsabilidad del Municipio de Guaynabo. Sobre esto, la señora Cruz López se limita a plantear que la relación entre ella y el Municipio era una de empleado-patrono por lo que los límites de responsabilidad que establece la Ley de Municipios Autónomos en acciones contra un municipio por daños y perjuicios, no son de aplicación. Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. see. 4704. No le asiste la razón. La reclamación de la señora Cruz López contra el Municipio de Guaynabo, basada inter alia en la Ley Núm. 17 de 22 de abril de 1988, es una en daños y perjuicios y la imposición de responsabilidad al Municipio precisamente está predicada en la culpa o negligencia de sus supervisores. A tales efectos, el Artículo 15.004 de la Ley de Municipios Autónomos dispone en lo pertinente lo siguiente:

"Las reclamaciones contra los municipios por daños y perjuicios a la persona o la propiedad, causados por culpa o negligencia de los municipios, no podrán exceder de la cantidad de setenta y cinco mil (75,000) dólares.

Cuando por una misma actuación u omisión se causen daños y perjuicios a más de una persona, o cuando sean varias las causas de acción a que tenga derecho un sólo perjudicado, la indemnización no podrá exceder la suma de ciento cincuenta mil (150,000) dólares. Si de las conclusiones del *980 tribunal surgiera que la suma de los daños causados a cada una de las personas excede de ciento cincuenta mil (150,000) dólares, el tribunal procederá a distribuir dicha suma o prorrata entre los demandantes tomando como base los daños sufridos por cada uno." (Enfasis suplido.)
Por último, la señora Cruz López plantea que el tribunal a quo erró al desestimar la demanda en cuanto al señor Héctor O'Neill en su carácter personal. No tiene razón.
El tribunal a quo consignó en la sentencia apelada que "no hubo prueba alguna de la parte demandante sobre la responsabilidad del co-demandado Héctor O'Neill en su carácter personal en los hechos bajo los cuales se reclama". Las determinaciones de hecho de la sentencia apelada son insuficientes para imponerle responsabilidad personal al señor Héctor O'Neill. Este Tribunal no está en condiciones de sustituir las determinaciones de hecho del tribunal a quo.
Ill
Por los fundamentos antes expuestos, se confirma la sentencia apelada.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97DTA40
1. Esa denuncia fue archivada. Posteriormente, el 3 de agosto de 1993 la señora Hermelinda Pérez Ortega, esposa del señor Machuca, denunció a la señora Cruz López por intrusión a la tranquilidad personal. Esa denuncia también fue archivada.
2. Véase Informe Conjunto, págs. 15-16.
3. Este Memorando fue adoptado el 19 de junio de 1989, bajo la administración del Alcalde Alejandro Cruz, Jr., y fue estipulado por las partes.
4. Además, según surge de las conclusiones de derecho, la señora Cruz López se querelló por escrito ante tres supervisores por el alegado hostigamiento sexual del cual era víctima y solicitó se investigara conforme lo requiere el procedimiento de Política de Hostigamiento Sexual del Municipio de Guaynabo.
5. Igual planteamiento fue sometido al tribunal a quo mediante moción de reconsideración tras haberse notificado la sentencia apelada. El tribunal a quo lo declaró sin lugar.
6. Véase además, Orta v. Padilla Ayala II., 95 J.T.S. 21.
7. Sobre el particular, alega que los demandados no hicieron ninguna oferta de transacción ni exploraron la posibilidad de transigir el pleito del epígrafe. Además, alega que "[l]a negligencia y los daños patentes y brutales que recibió la demandante era de 'voxpopuli' en el Municipio de Guaynabo".
8. Además, el tribunal a quo consignó que "[n]o hay controversia de que el co-demandado Héctor O'Neill no era alcalde de Guaynabo para la fecha de los hechos".